## Shippen's Administrator *versus* Clapp.

Under the law of Pennsylvania, a power to sell real estate, given to executors by will, vests in them the estate in the land, as fully as if it had been devised to them to be sold.

If executors authorized by will to sell real estate, execute such authority, and, as security for a part of the purchase-money, take an assignment of a judgment in favour of the vendee against a third party, guarantied by the purchaser, they take the management of such security at their own risk; and if, by any want of diligence on their part, the claim be lost, the purchaser is discharged from his guarantee, and is not bound to answer either to them or to the estate.

Shippen's Heirs *v.* Clapp, 5 *Casey* 265, affirmed.

If the claim assigned were so situated, at the time of the assignment, that with due diligence exercised towards it alone, without regard to the fate of any other claims against the debtor, it might have been recovered, and for want of such diligence be lost, the guarantor is discharged.

ERROR to the Common Pleas of *Crawford county*.

This was a judgment entered on the 18th July 1848, on a bond and warrant of attorney, dated the 17th October 1844, in favour of J. Stuart Riddle, surviving executor of Henry Shippen, deceased, against Ralph Clapp, in the penal sum of $9000, conditioned for the payment of $4500, or the amount due on an article of agreement bearing even date with the bond.

Henry Shippen died in March 1839, and by his will (a copy of which will be found in 5 *Casey* 266) provided as follows: " My debts are to be paid, and I authorize and empower my executors to sell all or any part of my real estate, and to make deeds of conveyance for the same, as well as for all such tracts or pieces of land as I have or may contract to sell, by articles in writing, for I make no verbal contracts."

On the 17th October 1844, under the power given by the will, the executors entered into a contract with Ralph Clapp, the defendant, to sell, and when paid for, to convey to him, certain specified tracts of land in Venango county, supposed to contain 4500 acres, more or less, the quantity to be ascertained by survey, at the rate of one dollar per acre, with the usual allowance for roads, &c.,

which sum the defendant contracted to pay with interest, in manner following, to wit, by assigning the balance of his judgment against David Phipps, in Venango county, amounting to about $1754.88, which he thereby guarantied; and the residue in six annual payments. This was the article referred to in the bond. The executors took an assignment of the judgment against Phipps with the defendant's guarantee, in part payment for the land. (See 5 *Casey* 265.)

At the time of the contract, David Phipps was insolvent, but it was supposed that the judgment in question was secured by the lien upon his real estate. It was only entered upon the appearance docket, and not on the judgment docket; and under the construction given to the Act of 29th March 1827, in Bear *v.* Patterson, 3 *W. & S.* 233 (pronounced in 1842), judgments took lien according to the priority of their entry upon the judgment docket. By force of this decision, priority was given to a judgment for $3100, entered on the judgment docket in favour of A. Plumer against David Phipps, on the 10th May 1839, nine months after the recovery of the judgment in favour of Clapp.

On the 3d April 1843, an Act of Assembly was passed which provided in substance that previous omissions of the prothonotaries to carry judgments from the appearance to the judgment docket, should "in no wise invalidate or impair such judgments or liens;" and gave them priority according to the date of their entry in the appearance docket: *Brightly's Purd.* 464, pl. 23. This gave the Clapp judgment precedence over Plumer's, and made it the first lien; which position it occupied until the passage of the Act of 16th April 1849, *Brightly's Purd.* 464, pl. 24; under the operation of which, Clapp's judgment was postponed to Plumer's, and lost.

The Clapp judgment was for a much larger sum than the amount of it assigned to the executors of Shippen; but all except this balance had been previously assigned to others by Clapp, with a preference in payment out of the amount to be realized from the sale of Phipps's property. At the time this contract was made, writs of *venditioni exponas* had been issued against Phipps, by other lien-creditors, and were then in the hands of the sheriff. The property was sold, under these writs, at November Term 1844, and was purchased by J. Stuart Riddle; but the amount was not 'sufficient to meet prior liens. This sale was never consummated, and at November Term 1848, it was set aside by the court, at the instance of A. Plumer. At the same term, the property was sold under a *pluries venditioni exponas* for $2825, no portion of which was applicable to the Clapp judgment.

J. Stuart Riddle died in July 1850, and letters of administration *de bonis non*, with the will of Henry Shippen annexed, were

granted to Arthur Collum, who was substituted as plaintiff on the record .on the 17th February 1853.

On the 7th April 1853, the defendant obtained a rule to show cause why the judgment should not be opened so far as to allow a credit thereon of $1754.88, as of the date of the bond. And on the 13th May 1853, the court directed an issue to be formed to try the question of payment of that amount of the Phipps judgment; let the defendant into a defence *pro tanto;* and discharged the rule as to the residue.

On the trial of the issue, the plaintiff's counsel presented the following points, upon which they requested the court to charge the jury :—

1. The will only gives to the executors a naked power to sell, and at the time of this contract, the concurrent act, or assent of both, was essential to render the sale valid; and an exchange of the land by them for other property, or such a sale for other than a money consideration, would not bind the estate, and those having the control of, or interest in it, to take such other consideration.

2. If defendant and Riddle, after the execution of the paper by Barlow and them, and in his absence, procured the general attestation, with the note of the interlineations, by the subscribing witnesses, the instrument is thereby invalidated, and should not be taken into consideration by the jury as a contract binding on the estate.

3. That, upon the face of the paper, and under the evidence given by the attesting witnesses, respecting its execution and attestation, and in the absence of any qualifying evidence on the subject, the contract is not binding upon the estate in this issue or otherwise.

4. The executors had no power to bind the estate to take the judgment against Phipps in payment for the land; and even if they had such power, there is not shown here sufficient evidence that it was assigned to the estate as stipulated in the contract.

5. If the estate is bound by the alleged contract to take the judgment with defendant's guarantee, and it was so actually uncollectable at the time, as apparently to render any effort to collect it useless, the defendant is not entitled to a credit therefor on his purchase, and the estate is not affected by any negligence afterwards of Mr. Riddle, nor by his alleged agreement with Phipps not to press it from the last of May, 1846, to the first of August after, unless it clearly appears (which it does not) that it was thereby lost.

6. If the jury believe, under the evidence, that even by the use of ordinary diligence in enforcing the collection of the judgment, the money would not have been likely realized on it, the estate would not be affected here, even if no efforts had been made to collect it.

7. The sale of the property of Phipps, on the execution of Cooper & Young, at November Term 1844, and its remaining undisposed of until 1848, relieved the estate, even if otherwise bound, from further proceedings on this judgment in the meantime; besides, it affords *prima facie* evidence of all the property would bring by a sheriff's sale of it, and after that sale was set aside, if the surviving executor used reasonable diligence then to enforce its collection, and failed, the verdict should be for plaintiff.

The court below (GALBREATH, P. J.) delivered the following charge to the jury :—

" The original judgment in this case appears to be entered on a bond given to the executors of Henry Shippen, dated the 17th day of October 1844, for $4015.66, and entered on the 18th July 1848; upon which appear various proceedings and some payments, made to the present administrator *de bonis non*, endorsed upon the bond, and which are not disputed.

" It is alleged on the part of defendant, that this bond was the consideration of a purchase of land made by defendant, from the executors of the late Judge Shippen, by contract, they being authorized by will to make such sale; that by the contract Clapp, the defendant, assigned to them the balance of a judgment he held against one David Phipps, of Venango county, of about $1700, he guarantying its collection, which sum might have been collected with due diligence on the part of the executors, and therefore it should be credited on the judgment against the defendant Clapp. Whether this balance of judgment against Phipps should be applied as a credit to Clapp, on the judgment, in favour of Shippen's estate against him, is the issue to be tried here.

" The defendant shows the will of Judge Shippen, dated 4th January 1838, admitted to probate 29th March 1839, appointing Stephen Barlow and John Stuart Riddle his executors, and authorizing them to make sale of property, &c., including real estate; also a contract of the 17th October 1844 (same date as the bond on which this judgment is entered), by which the defendant purchased from the executors a body of land for the price mentioned in the bond, and assigned to them the balance of a judgment he held against Phipps, amounting to the sum of $1754.88, and guaranties the payment of it, and then shows the judgment (Clapp *v.* Phipps) entered 2d August 1838, for $2652.94, of which it is alleged that was the balance mentioned unpaid. There was then a considerable amount of testimony on both sides as to proceedings against Phipps on this and other judgments, the situation and valuation of the property he owned. On the whole of this evidence there are some questions of fact for the jury to determine, which will be stated as we proceed, to decide the legal points which arise in the cause.

[Shippen's Administrator *v.* Clapp.]

" The first four points presented by the plaintiff's counsel ought to have great weight under a different state of facts, and the parties occupying a different position towards each other than they do here.   If this were a naked suit on the contract, to recover damages for a non-compliance with its terms on either side, these points might be determined differently from what we feel bound to determine them now; or if the contract for the sale of the land had been made by the testator himself in his lifetime, and the executors had undertaken to accept, or agreed to accept of the Phipps judgment in payment of it.   Here, however, the sale of the land and the acceptance of the judgment (if it was accepted), under the terms mentioned in the contract, was an entirety, one contract, made with the executors themselves, under the power in the will, and the acceptance of the judgment a part of the contract itself, executed in part, by the defendant's taking possession of the land—recognised by the estate—sought to be enforced by the administrator, and payments received upon it.   Judge Barlow, it appears, died in August 1845, and no objections were made by him in his lifetime.   Mr. Riddle, it seems, had the judgment entered up, in 1848, in his name as surviving executor, and died in July 1850; and letters were afterwards issued to the present administrator, with the will annexed, and he received payments upon it.   The parties on both sides have treated it as a valid contract, no one attempting to object to it or repudiate it.   Had the representatives brought an ejectment for the land, and treated it as a nullity, it might be different.   But taking into consideration what appears to have been done, all exceptions to the mode of execution of the contract, we think, are waived, as well as the strict technical powers of the executors to make the contract in the way they did, and therefore these points are determined in the negative.

" There does not appear to be any paper, separate from the contract, given or filed, containing an assignment.   It is said by the defendant, that the contract contains an assignment executed, and the executors acted upon it.   Did they, or did Mr. Riddle, as the surviving executor, accept of it, act upon it, and take the charge and control of it?   It would seem, that he was counsel for other creditors of Phipps, and it is said, he may have used this judgment as an instrument to enable him to collect and recover for them—that would make no difference, provided you are satisfied from the evidence that, as executor, he accepted the assignment of the judgment and assumed the control of it—the estate would be bound by his acts in relation to it.

" By the terms of the guarantee, Mr. Clapp was bound for the payment of the amount, if the judgment was uncollectable—that is, Phipps insolvent as to the judgment at the time of the assignment; or if the executors used due diligence, but were unable to

collect it. The main questions, both of law and fact, arise on this guarantee on the principles here stated.

"Clapp's judgment against Phipps, as we have seen, was entered on the 2d August 1838. It was entered, however, only on the appearance or continuance docket, and was not entered on the judgment docket. Other judgments were entered afterwards in point of date, but were carried to and entered on the judgment docket—one belonging to Arnold Plumer was of this character—entered on the appearance docket on the 10th day of May 1849, and duly entered on the judgment docket, for $3100. Under the Act of Assembly of 16th April 1827, and decisions of the Supreme Court upon it, entitled 'An Act relative to the distribution of money arising from sheriffs' and coroners' sales,' and as the law stood up to the 3d of April 1843, in case of the sale of property the latter judgment would be entitled to the proceeds of sale in preference. By the Act of the 3d of April 1843, entitled 'An Act to preserve and perfect the validity of judgments entered upon the continuance dockets of the courts,' Clapp's judgment was restored to its preference over judgments later in date, although, entered on the judgment docket, and thus stood at the date of the contract and assignment to the executors of Shippen, and so continued. How long it so continued, is a question raised, although not much pressed by the plaintiff's counsel. It is said, that this preference was repealed and changed by the resolution of the 16th April 1845. If this were so, it would affect the question here just so much as this: from the 17th October 1844, the date of the assignment, up to the date of this resolution, might not afford sufficient time to make sale of property on which the judgment was a lien, and obtain a distribution on, it of the money arising from the sale, before the 16th April 1845, and therefore it may be material to inquire into the effect of that resolution. On a careful examination of the resolution, we are satisfied it did not change the law so far as this judgment was concerned, applying only to judgments in Union and Cambria counties; and that the Act of 3d April 1843 remained in full force in Venango county, and as to this judgment, until the Act of 16th April 1849, when the provisions of the resolution were made general, and when it is admitted the law was changed, and the Act of 1827 restored in full force upon this judgment.

"The inquiry, then, for the jury is this: was Phipps solvent or insolvent as to the judgment at the time of its assignment by Clapp to the executors, if assigned and accepted as alleged? That is, could this judgment have been collected from the property of Phipps with the exercise of due diligence on the part of the executors? A great amount of testimony has been given, much of it conflicting, or variant, as to the circumstances of Phipps, the value of his property, the amount of his indebtedness, &c. It is

[Shippen's Administrator *v.* Clapp.]

most probable from the whole of it, that he was hopelessly insolvent during all the time from 1844 until 1849, the time when it appears a distribution was made of the proceeds of sale of the property—so far as his general creditors were concerned. That, however, is not the question here. The question is, could the amount of the balance of the judgment assigned have been collected from his property, if due diligence had been employed in enforcing legal proceedings to collect it? The jury will take into consideration the whole evidence as to the value of the property bound by this judgment—the entire conduct and acts of the executor, Mr. Riddle, through the entire period, from the time of its assignment down to the distribution of the money arising from the sale of it, and (we say in answer to the 5th and 6th points) that even if the estate is bound by the alleged contract to take the judgment with defendant's guarantee, and it was so actually uncollectable at the time, as to render any efforts to collect it, in the belief of the jury from the evidence, useless, the defendant is not entitled to a credit therefor on his purchase, and the estate is not affected by any opinions of Mr. Riddle, or agreements not to press the collection of the judgment; and if the jury·believe under the evidence that, even by the use of due diligence in enforcing the collection of the judgment, the money would not have been realized on it, the estate would not be affected here, even if no efforts had been made to collect it. With these modifications these points are answered in the affirmative; but, if it is intended to assert in these points that any *apparent* insolvency differing in fact from its true intention, as disclosed to the jury by the evidence—or that efforts short of due diligence would fail of success,· would relieve the estate, we dissent from what is stated in these points. A party holding an assignment with a guarantee such as this, must satisfy a jury from the whole evidence that the assigned debt or obligation was not collectable at the time it was assigned, or that it could not be collected with the enforcement of *due* diligence—*due* diligence is the language used in the books, and means the skilful employment of all the legal means furnished by the law to enforce collection—there may be a shade of difference between that and *ordinary* diligence, the latter term referring rather to what may be customary in particular localities, and the former to what is legal every where in the state. · Be that as it may, *due* diligence is the language of the law, and what constitutes due diligence is a fact to be determined by the jury from the whole evidence submitted to them.

"It seems, the main property of Phipps was stricken off to Mr. Riddle on his bid at sheriff's sale in November 1844, and so remained until 1848. Why this was done, or with what object, does not distinctly appear in the evidence. It is alleged on the part of Clapp, that the object was to secure the payment of other

[Shippen's Administrator *v.* Clapp.]

debts against Phipps, in which Mr. Riddle was interested as counsel. It was bid off at a small price compared with what it sold for in 1848. The sale was set aside finally, it would seem, without objection on either side. In the mean time, an agreement was made, by which Phipps procured a writing, signed by two or three others, with himself, conditioned for the delivery of a quantity of pig metal to Mr. Riddle, together with J. W. Howe, Esq., who was attorney for a portion of the creditors of Phipps, which would seem to have failed in its performance, and nothing was realized from it. We are asked in the 7th point to charge that the fact of the sale in 1844, and its remaining undisposed of until 1848, relieved the estate from responsibility in pursuit of the assigned and guarantied debt. It is a fact to be taken into consideration by the jury, in connexion with all the other evidence in the cause, whether the debt was collectable or not out of the property bound by it, and as to the value of the property bound, but is not conclusive of the result claimed in this point.

" The case is referred to the jury on the principles of law already stated, for them to pass upon the whole evidence, and determine the inquiries following :—

" 1st. Did the executors of Shippen accept, receive, and take the control of the judgment against Phipps, as stated in the contract?

" 2d. Was the claim against Phipps, assigned by Clapp, so situated at the time of its assignment, that with due diligence exercised towards it alone, and with it alone in view, without regard to the fate of any other claims in the hands of Mr. Riddle, as to be collectable.

" If, on a review of the whole evidence in the cause, you are satisfied of the affirmative, Clapp is relieved from responsibility on his guarantee, and entitled to a credit, and to your verdict on this issue. If not so satisfied, your verdict will be for the administrator. You do not pass upon the amount in either case; that will be determined afterwards on the issue in the *sci. fa.* which has been issued on the judgment."

To this charge the plaintiff excepted; and a verdict having been rendered for the defendant, and the rule made absolute so far as to allow him a credit on the judgment for $1754.88 as of the date of the bond; the plaintiff removed the cause to this court, and here assigned the charge of the court below for error.

*Church, Farrelly,* and *Finney,* for the plaintiff in error.—The court erred in not giving distinct answers to the points propounded by the plaintiff's counsel: Ames *v.* Longstreth, 10 *Barr* 147; Smith *v.* Thompson, 2 *S. & R.* 49; Noble *v.* McClintock, 6 *W. & S.* 58; Slaymaker *v.* St. John, 5 *Watts* 27.

[Shippen's Administrator v. Clapp.]

The executors had no power to barter away the land, or to sell it for anything but money. The stipulation to take the Phipps judgment in part payment, was not the contract of the estate, but if anything, obligatory only on the executors personally; and the estate therefore is not responsible for the alleged negligence of Riddle: Miles v. Richwine, 2 *Rawle* 199; Waldron v. McComb, 1 *Hill* 111; Bloomer v. Waldron, 3 *Id.* 361; State v. Belt, 7 *Gill & Johns.* 444; Billington's Appeal, 3 *Rawle* 54–7; Kaufman v. Crawford, 9 *W. & S.* 131; Willis v. Willis, 2 *Jones* 162; Bonsall's Appeal, 1 *Rawle* 270; Seitzinger v. Weaver, *Id.* 383; Dillebaugh's Estate, 4 *Watts* 179; Loomis v. McClintock, 10 *Id.* 276; McCreery v. Hamlin, 7 *Barr* 87; Alexander v. Alexander, 2 *Ves. Sen.* 644; *Paley on Agency* 1, § 3; 1 *Story Eq.* § 581; 2 *Id.* § 1128; *Sugden on Vendors*, 52, 54; *Long on Sales* 236–7; *Sugden on Vend.* 62 n.; 1 *Johns. Ch.* 308; Sage v. Nock, 3 *Am. L. J.* 326; Bank v. Tyler, 3 *W. & S.* 373, 377; Chambers v. Miller, 7 *Watts* 63; *Hill on Trustees* 477; *Sugden on Powers* 512; 10 *Ves.* 370, 381; 5 *Mad.* 438.

*H. L. Richmond*, for the defendant in error, cited Shippen's Heirs v. Clapp, 5 *Casey* 265; Strohecker v. Farmers' Bank, 6 *Barr* 44; Rudy v. Wolf, 16 *S. & R.* 82; Johnston v. Chapman, 3 *Penn. R.* 18; Gilbert v. Henck, 6 *Casey* 209; Kirkpatrick v. White, 5 *Id.* 177; Miller v. Berkey, 3 *Id.* 318.

The opinion of the court was delivered by

READ, J.—By the will of Judge Shippen, under the law of Pennsylvania, his executors took the estate in the land as fully as if it had been devised to them to be sold. And this court have, in Shippen's Heirs v. Clapp, 5 *Casey* 265, determined the sale made by them, by articles of agreement, to Ralph Clapp, to be a valid one. Part of the consideration-money was secured by a judgment of the purchaser against David Phipps, assigned to the executors and guarantied by the purchaser Clapp. "For any imprudence," said the court, "in taking or managing such a claim, the executors must answer in the usual way. The defendant, Clapp, is not bound to answer for them."

The present question arises out of this judgment, which was entered in the Common Pleas of Crawford county, on the 18th of July 1848, in the name of J. Stuart Riddle, surviving executor of the will, &c., of Henry Shippen, deceased, against Ralph Clapp, on a bond and warrant, dated October 17th, 1844, in the penal sum of $9000, conditioned for the payment of four thousand and five hundred dollars, or the amount due on an article of agreement of the same date as the bond. After the death of Mr. Riddle, and the substitution of the present plaintiff, the defendant applied to the court to open the judgment so far as to have allowed to

him a credit of the sum of $1754.88 as of the date of the bond, being the balance (mentioned in the article of agreement) of Clapp's judgment, against David Phipps, assigned to the said executors, and which the said Clapp guarantied.  An issue was formed to try the question, and under the instructions of the court, resulted in a verdict for the defendant.

Two questions, or inquiries, were submitted to the jury, by the court, for their determination.

1st. Did the executors of Shippen accept, receive, and take the control of the judgment against Phipps, as stated in the contract?

2d. Was the claim against Phipps assigned by Clapp so situated at the time of its assignment, that with due diligence exercised towards it alone, and with it alone in view, without regard to the fate of any other claims in the hands of Mr. Riddle, as to be collectable?

In giving a verdict for the defendant, the jury answered both these questions in the affirmative, and he became entitled to the credit claimed, unless the court erred in their charge and instructions to the jury. We have examined the charge of the late learned judge with great care, and perceive no error in his statement of the law.

Judgment affirmed.