## Miller's Estate

*Kratz & Hillegass*, for petitioners; *Henry M. Brownback*, for respondents.

HOLLAND, P. J., September 2, 1931.—On March 7, 1930, William Henri Bergey, sole executor and trustee under the will of Rachel St. Clair Miller, deceased, filed his petition for a citation directed to George M. Miller, sole executor and trustee under the will of James S. Miller, deceased, and Montgomery Trust Company, the trustee and executor to be substituted at the death of said George M. Miller, to show cause why an inquest in partition should not be awarded.

In the petition, the petitioner claims to be seised of the legal title to one-half of all the real estate of which decedent died seised, Rachael St. Clair Miller having been devised a one-half undivided interest therein by the decedent, and being so thereof seised died and devised her said one-half undivided interest to petitioner as trustee.

On April 4, 1930, George M. Miller filed his answer. It contains several paragraphs, but they all may be classified as setting up two defenses, one that Rachael St. Clair Miller had only a life interest in one-third of the rents of the real estate and not a one-half interest in the fee under the will of decedent as alleged in the petition, and, therefore, nothing passed to the petitioner, the trustee under her will. The second defense is res adjudicata in that, the said Rachael St. Clair Miller having been declared a weak-minded person, the court of common pleas, in passing upon whether she should be permitted to take against her husband's (the decedent's) will, incidentally expressed the opinion that she was entitled to a life interest in one-third of the rents of the real estate; further, that two accounts of the trustee of the decedent had been audited and confirmed in which her guardian was awarded one-third of the rents accounted for. On April 4, 1930, Montgomery Trust Company filed its answer, in effect adopting as its own the answer of George M. Miller.

The facts of the case are undisputed. Decedent died December 31, 1924, leaving a will dated December 7, 1900, probated in Montgomery County January 7, 1925. He left to survive him a wife, Rachael St. Clair Miller, and one son by a former marriage, George M. Miller. Said son has children living. Rachael St. Clair Miller was by the court of common pleas of this county, as

of No. 6, February Term, 1925, decreed a weak-minded person and Norris-town-Penn Trust Company appointed guardian of her estate. On September 20, 1926, said guardian petitioned the court for leave to take against the will of decedent, and by decree of January 21, 1927, for the reasons set out in the opinion, the prayer of said petition was denied [Miller's Estate, 9 D. & C. 657].

Rachael St. Clair Miller died January 14, 1928, leaving a will dated October 24, 1921, probated in this county January 30, 1928. In it she appointed James B. Jacoby and William Henri Bergey executors, and named James B. Jacoby trustee of part of the proceeds of the residue of her estate; which she ordered sold. James B. Jacoby renounced his right to letters and letters testamentary were granted to William Henri Bergey solely. Said James B. Jacoby renounced his right to act as testamentary trustee. William Henri Bergey was appointed substituted trustee by this court.

On February 24, 1927, this court confirmed nisi an adjudication in the Estate of James S. Miller, wherein one-third of the accumulated rents was awarded to the guardian of Rachael St. Clair Miller. On April 16, 1928, a second adjudication was confirmed nisi, wherein a similar distribution of rent in a like proportion was awarded said guardian. No exceptions were filed to either adjudication, nor was any appeal taken therefrom. A copy of the will of the decedent, James S. Miller, is appended to the petition and answer. A copy of the will of Rachael St. Clair Miller is appended to the petition, as is also a schedule of all the real estate of which James S. Miller died seised. Also attached to the answer are copies of the opinion sur the petition of the guardian of Rachael St. Clair Miller above referred to and of the two adjudications above referred to.

Section two of the Orphans' Court Partition Act of June 7, 1917, P. L. 337, as amended by the Act of April 27, 1927, P. L. 449, provides that the jurisdiction of this court "shall be exercised on the petition . . . of any devisee having an interest in the real estate in question in a case of testacy . . . or of any . . . heir . . . or devisee of any party in interest."

The questions to be decided, therefore, are, first, whether Rachael St. Clair Miller was a devisee under the will of decedent; secondly, if so, what the quantum of her devise was, considering preliminarily whether the question as to the quantum is res adjudicata as contended, and, lastly, whether her title passed to petitioner in his capacity of executor or trustee.

The first question is not in dispute. It is conceded that she was a devisee under decedent's will, which leads us to the second and main question as to the quantum of her devise. We cannot agree with respondents that this question is res adjudicata. The primary requisite to make this a valid defense is that in the former action the controversy was between the same parties and the subject matter thereof the same concerning which the court's judgment has been made upon all relevant matters that were or could have been raised. As stated in Hay v. Hillegass, 275 Pa. 497: "Where the court has jurisdiction of the cause of action, the subject matter and the parties, the judgments and decrees entered are conclusive of all relevant matters which were or could have been raised." Considering, first, the opinion of the court of common pleas as to whether the wife of decedent would be permitted to take against his will, the respondents, although parties to the record, are not really essential to the proceeding. It is essentially an ex parte proceeding to determine primarily what is the best interest of the spouse, who is non sui juris. Furthermore, the subject matter of the proceeding is not to settle the rights of the spouse under the will finally. The quantum of her rights might be con-

sidered incidentally, but what that quantum was in this case was neither raised nor more than incidentally considered, merely to get to the primary question as to whether she should be permitted to take against the will. The decision in the last analysis was on the broad ground that owing to her advanced age she did not need the amount from this estate that the intestate laws would give her. The essential subject matter of this proceeding was not to try title nor determine the quantum of decedent's real estate due his wife under the will. It decided solely she must take under the will.

Much less is the confirmation of the two adjudications above referred to res adjudicata. The subject matter was the rents of real estate, not the real estate itself, and not only was the question of the title to the real estate not raised, but it could not possibly have been raised. Vanderbilt's Estate, 4 D. & C. 209, held that a ruling in the adjudication of an account of a trustee as to the devolution of the income of a share of the residue is not res adjudicata on the audit of a subsequent account as to the devolution of the principal of that share remaining in the hands of the trustee. How much more so would the parallel rule above expressed apply in the case of real estate where the former adjudication dealt only with rents thereof.

What, then, was the quantum of the devise to Rachael St. Clair Miller of the decedent's real estate under the terms of the will?

First of all, does this court have jurisdiction to decide that question, it in effect being a decision as to the title to real estate? The orphans' court has jurisdiction to decide title to real estate when it is incidental to the interpretation of a will: Kidd's Estate, 293 Pa. 21.

Section nine of the Wills Act of June 7, 1917, P. L. 403, provides: "Every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." The testator died December 31, 1924, so that the will speaks of that date and is governed by the law effective at that date.

In construing this will, it is not so much a matter of construing technical words as endeavoring to ascertain the general and true intent of the testator with reference to his real estate from the four corners of the instrument. His first reference to his real estate is in the first item, where he directs that all encumbrances thereon shall be paid out of the personalty. Then follows the item wherein he gives and devises to his wife such interest in his real and personal property as she is entitled to under the intestate law. At the time of his death, under the provisions of the Intestate Act of June 7, 1917, P. L. 429, she would be entitled to one-half of the personalty and one-half of the real estate absolutely, the decedent being survived by only one child and his said spouse. So far in the will testator's wife's interest in the real estate is clear, as above stated. The next item we may ignore as the real estate therein concerned was disposed of by testator in his lifetime. Then follows the item as to the disposal of the "rest, residue and remainder" of his real estate which he in effect devised in trust to pay one-third of the income to his wife for life and two-thirds thereof to his said son for life, with provisions to take effect at their respective deaths. If we are to give words their ordinary effect, to say nothing of the significance that their repeated use in wills has come to imprint on them, "rest, residue and remainder" means what is left after all other devises (in this case of real estate) have been effectively made. Certainly, therefore, in this case, the devise to the wife, as measured by the intestate laws, of one-half of the real estate, coming in the fore part of the will, the

residuary clause must refer to the real estate remaining after her one-half undivided share has been effectively provided for or the other one-half undivided interest remaining.

It will be noted that this "residuary" clause disposes only of real estate and that the entire elaborate disposition of the real estate residue is contained in this one item. A careful reading of this item, in our opinion, can leave no doubt that the item deals exclusively with the remainder of the real estate after the devise of a one-half undivided absolute interest in the real estate has taken effect. We find, therefore, that at the death of the decedent, James S. Miller, his wife, Rachael St. Clair Miller, became seised of a one-half undivided interest or title in and to all the real estate of which said decedent died seised, and George M. Miller, as trustee, became seised at the same time of the remaining one-half undivided interest or title in and to said real estate, which status obtains as to all the real estate involved in this proceeding.

A perusal of the will of Rachael St. Clair Miller discloses that after specific bequests, having no relation to her interest in the land of which her husband died seised, she orders and directs her executors, of which the petitioner is the sole remaining one, "to convert into money" all the rest, residue and remainder of her estate of whatever nature or kind the same may be and wheresoever situate, authorizing said executor to sell and convey real estate in the usual terms. After the estate is thus converted into money, she disposes of the money.

This residuary clause disposes of her interest in the real estate of which her husband died seised, which we have found to be a one-half undivided absolute interest in fee.

Section 28 (a) of the Fiduciaries Act of June 7, 1917, P. L. 447, provides that "executors . . . to whom is given . . . a naked authority only to sell any real estate, shall take and hold the same interests therein, and have the same power and authorities over, such estate, for all purposes of sale and conveyance, and also of remedy by entry, by action, or otherwise, as if the same had been thereby devised to them to be sold, saving always to every testator the right to direct otherwise." We scarcely need any further authority to hold that the petitioner, William Henri Bergey, executor, is in the same position as though Rachael St. Clair Miller had devised her one-half interest in the real estate in question to him, and that he has authority, as the holder of the legal title, to institute this suit. However, there are other authorities to support this conclusion.

Where a devise is to an executor with direction to sell and distribute proceeds, legal title is in the executor, and the distributees acquire no equitable title until election to take land instead of proceeds, either formally or by some decisive act: Henderson v. Henderson, 133 Pa. 399. Also, see Miller v. Sheaffer, 75 Pa. Superior Ct. 584, to the effect that where authority is given the executors to sell and distribute, no legal title in the land is in the distributees.

The direction to the executor to sell the decedent's properties and pay the proceeds to the party in the will indicated worked a conversion and gave the executor full power and authority over the real estate, with the right to maintain any action at law or in equity which might be necessary to carry out the direction and to protect interests with which it was charged: Sears v. Scranton Trust Co., 228 Pa. 126. In such cases the executor is practically constituted a trustee, and, therefore, has legal title.

Where land is devised to a life tenant, at whose death the executor is directed to sell the land and distribute the proceeds, the executor has the legal title subject to the life estate: Brown and Sterrett's Appeal, 27 Pa. 62.

Where a testator directs his real estate to be sold by his executors, the title is vested in them, and until sale can be accomplished on reasonable terms, it is their duty to keep the property in repair and make it productive: Corby's Estate, 5 Kulp (Luzerne) 160.

A power to sell real estate given to executors by will vests in them the estate in the land as fully as if it had been devised to them to be sold: Shippen's Admin'r v. Clapp, 36 Pa. 89; Lefever's Estate, 24 Lanc. L. Rev. 189.

Under all these authorities it is plain that William Henri Bergey, the petitioner, has the legal title to a one-half undivided interest absolutely and in fee in the real estate involved in this proceeding and has full authority to maintain this proceeding in partition. We need not reiterate that under the terms of the will of James S. Miller, George M. Miller, trustee, is seised of the other one-half undivided absolute interest in fee in said real estate. Each of these two, holders of undivided interests is, therefore, entitled to partition.

And now, September 2, 1931, an inquest in partition is awarded as prayed for to make partition among the parties in accordance with their respective interests. From Aaron S. Swartz, Jr., Norristown, Pa.